Council? Oh, you're over there. Got it, okay. Good morning. My name is April Lerman. I'm here today on behalf of Cal Frederick Burford, who filed an appeal. I would like to reserve two minutes for rebuttal. Okay, and you'll watch the clock. I will. Okay, we haven't started the clock. Mine hasn't started counting. It's starting. Oh, now it's going. Okay. Got it. I plan to talk about two issues today. The first is that the cert warrant in this case was not supported by probable cause. It should not have been issued. The second, closely related issue, is that the Leon Goodfaith exception to the excusement report should not have been applied by the district court alone. If the officer who executed the cert warrant in this case must have known there was no probable cause. Counsel, doesn't the Ariza case force us to look to the totality of circumstances? In your brief, you took each circumstance separately, but altogether, doesn't Ariza say we should look at all of them in combination? Your Honor, the lie is clear that we are to look at the totality of the circumstances and that we are to look at them all in combination. The Supreme Court has said this in Arvizu and also in Sokolov and other cases. On the other hand, or in combination with that, other appellate courts like this one have understood that the only way to do that is to look at them individually first and then consider them together once properly considered. The fundamental command of the Fourth Amendment is reason. There shall be no unreasonable searches and seizures. Therefore, reason has to be applied to each of the factors and to the group as a whole. If you look at the circumstances that are laid out in the officer's affidavit, he talks at the beginning and lays out the history of drug smuggling and to anchorage from hotbeds of illicit drugs such as Los Angeles. I always like to be known as coming from a hotbed of something. I didn't want to mention that. I didn't want to make you have to volunteer. But we did take note of that. I took note of that. But the point is they list out a series of factors that led them to suspect this otherwise anonymous box. I mean, it's just a big sealed box. As against that background, he then articulates why this particular box raised his suspicion. Now, where in the breakdown of the analysis did he go off the rails? Are you challenging that they can look to the sort of history of smuggling here based on their expertise, or is that not to be considered? I think that the law is clear that they are to consider their expertise in smuggling. Absolutely, that should be considered. I think where he went off the rails in this affidavit was in the United States Supreme Court read versus Georgia. The Supreme Court in 1980 looked at if it was a detention case whether it was appropriate to stop a drug courier in an airport. And the Supreme Court said that as a matter of law, factors that are vastly more likely to be, that are true for the vast number of non-criminal persons, cannot be the sole basis for even a stop. And I would submit that where the magistrate and the officer went off here is that the factors that were listed identified characteristics that are vastly true for the majority of non-criminal events. For example, that the name of the sender was common, that it was sent by one person to another, that there was a handwritten mailing label, that it was taped according to FedEx instructions, that it was sent overnight delivery, which is expensive. It was sent from a mailing store. The sender had an unlisted telephone number on the cell phone. Now, you're saying that those apply to a vast number, but that's why I asked my question. He said that they aren't. In fact, those are unusual in this unit. I would just submit that he didn't say they aren't common. He simply said that they are common among drug dealers. He never referred to the question of whether they're common among everybody who isn't a drug dealer also. So what you're saying is that he gave no statistics. There's no words. What percentage of all the FedEx packages are hand-addressed as opposed to the computer? There's no statistical evidence. It's just anecdotal. But how about the fact that the- Isn't that true? Well, I would submit that he's not required to put forward statistics, but the test is for a prudent person to have a substantial basis to believe that there is contraband in this box. Therefore, a prudent person has got to consider common sense practical everyday experience and say, I see Postal stores all over the neighborhood where I live when I drive to work at Gas Floor. Is it only drug dealers who are getting into the business? So I would submit he wasn't required to submit statistics, but he was required to evaluate those factors in light of common experience. How many of us have cell phones that are listed in the bottom? What about the fact that the phone number listed was in the past linked to drug transactions? Judge Nelson, I think you correctly identified the sole factor in that affidavit that had any link of the possibility of this package being linked to drug distribution. And I think that that is the- The central fact in this case is the dog said no. The dog said no. The only factor that linked this package to drug distribution was the fact that at some point, the phone number identified for the recipient of the passage, somebody at that phone number had placed a call to some undisclosed person, we don't know who, who was under investigation for drugs. We don't know when. Apparently, there's no listed arrest or charges that grew out of that investigation. So as far as we know, it didn't result in charges or conviction. So the only thing we have is the most speculative link. Perhaps this would have been enough to detain the package for a dog sniff. When the dog said no, there was nothing, nothing that showed a reasonable prudent person there's a substantial basis to expect. Well, let's assume- You've got about a minute left if you want to say two minutes. So let's assume we agree with you on that. What about the good faith? The good faith exception is applicable, is not applicable here. And I would submit that the training of a police officer, the test is every reasonable, any reasonably well-trained police officer would have to know that this affidavit was insufficient. It's probable cause and reasonable suspicion are the bread and butter of drug interdiction officers' work. When a drug interdiction officer looks at an affidavit like this, where the drug said no, every other factor is almost useless under read and precluded as a matter of law from being adequate. There simply was a probable cause and there was no indicia here. There was no basis for a reasonable police officer to conclude that official belief in the existence of drugs in that package. Does it make a difference that the magistrate judge who issued, the state magistrate who issued the warrant here was relying on the officer who then in turn goes out to rely under good faith? Good faith still applies? Good faith applies, but it's relevant that it was the same officer who submitted the affidavit and then executed it because the officer obviously had full knowledge of the affidavit since he wrote it himself. I see I'm just about out of time. You have a little under two minutes. You can reserve that if you'd like. Good morning, Your Honors. May it please the Court, my name is Andre Stewart and I represent the United States. As the first case on the first day of your document, I'd like to take this opportunity to welcome you. Thank you. The defendant in this case wants you to punish Task Force Officer Herron by application of the exclusionary rule for gathering information exactly as the law would require him to do, to gather that information that he in his training and experience believes supports the finding that there is a fair probability of drugs in this particular package, presenting it to a neutral and attached magistrate judge who issues a warrant, and then in fact opening the package and intercepting 11 pounds of methamphetamine which is vacuum sealed in order to defeat a drug dog detection. What about the fact, though, that they used a drug dog and the drug dog sniffs and said, no drugs. And then you have just a whole, this is a very close case for me, you have a whole series of events taken individually seem very innocuous, heavy tape, postal address, etc. The only thing was the phone listed. What is your response to that? Well, my response to that is in this court's case in United States v. Hernandez in 2002, this court ruled that five factors present from a nationally recognized drug package profile actually rose to the level of reasonable probability that there would be drugs in the package, reasonable probability being the standard for probable cause. Now, in that case, they were only looking to see if there was reasonable suspicion to detain the package in order to have the drug dog sniffed. But in summation, the court said that just based on those five factors present in the nationally recognized drug profile, there was a reasonable probability that there would be drugs in that package. And so in this case, we have those five factors that were found in Hernandez to constitute probable cause, plus we have... intercepted going into Hawaii, as I recall, and it was a question of detention. It was whether they could hold the package. Counsel seemed to concede that there was enough for perhaps reasonable suspicion, but it was negated once the dog said no. In this case, you're speaking in this case? Yes. I'm sorry, yes, in this case. And I think, as in Ardabisu and in Illinois v. Gates, it's a totality of the circumstances viewed through the training experience of the officer. And here we have a training and experience of an officer who's applying a nationally recognized drug package profile. And so just based on those five factors, we have probable cause to say that there was a fair probability, a reasonable probability, that there are drugs in this particular package. So is your argument saying basically on just the general profile they could have sliced open without even bothering with the dog? In this case where, yes, I believe that. You are saying that? Under Hernandez, I believe that is correct. But here we have... But wait a minute. Hernandez was detention. It wasn't opening. Correct. You're saying you could hold it for a dog. Correct. But in the summation of that case, the court did say that those five factors led to a reasonable probability that there would be drugs in that package. And here we have more than Hernandez. We have additional eight factors that were not present in Hernandez that make this case even stronger than Hernandez. And that includes the fact that upon further research, that there was contact with this phone number of the recipient with an ongoing drug investigation. And the fact that the drug dog did not alert does not undermine any of this. The officer was not concerned that the drug dog did not alert because, as he learned, that in a 26-pound package, it's likely to have a large quantity of drugs, and drug dogs are not trained to detect large quantities of drugs. Also, as borne out by the evidence in this case, drug dealers are getting much more sophisticated in defeating drug dogs because they know it is a slam dunk that they can get their package open if a dog sniffs on it. So they have resorted to ulterior methods of vacuum sealing. And this is set out in the affidavit. This was not something that the officer was afraid to disclose. He took all the necessary steps within 20 minutes of discovering this package. He had the drug dog there to sniff. But then when the drug dog did alert and wasn't concerned, he included that in that affidavit. But he undertook further investigation, including searching out the owner of the post office box, determining that there was no relationship to that person and to the sender, and that the phone number for the sender was unlisted. And these are important because these are not innocent activities. If you send a package and pay $124 to get it there overnight, it's probably valuable enough that if it doesn't reach its recipient, that you want to make sure they get a hold of you, the sender, and get that package back to you. Well, wait a minute. You're now arguing that there's enough based on what they actually investigated. Earlier you said that the five factors, the profile, regardless of anything else, was enough. Are you sliding into the facts of this case? What is making me nervous is you're taking Hernandez and extrapolating from that, which was simply a seizure case, a detention. It wasn't to open the actual package. It was detaining it so they could bring the dog. And now you're saying, well, what we were really doing in that case was saying, That's all you need as long as you go down the checklist. Even if that's all you've got, you can open the package. They didn't need to wait for the dog in Hernandez. They could have just cut it open. Is that what you're saying? In this case, as set up in this court by United States v. Cruz, which is a recent case, 2007, this court can reach good faith without reviewing probable cause. You're sliding off the point. Let's talk about probable cause. We'll get to good faith. But your argument on behalf of the government, as I understand it, is you're reading Hernandez, a detention case, as allowing the agents in Hernandez, in fact, to open the package based on what they had before them at the time. That is what the court in Hernandez said when it said there was a reasonable probability that there would be drugs in the package. That is the standard that is used interchangeably in this court to say that it's equivalent to probable cause. I'm not saying that that case is controlling here because we actually have more than we had in Hernandez. In Hernandez, they simply had those five factors, that the source of the drugs was from California, that almost all of the seams of the package were taped, as is here, that express mail is known to be used by drug dealers, that a person-to-person package is suspect because more often it's a business. The majority of packages sent are business-to-business. And also that the return address was unverifiable. But here we go beyond Hernandez. We have more than Hernandez. We've got a phone number that was unlisted, which is another indicia that drug dealers don't want to have the package traced back to them. The package was sent from Lakewood when, in fact, the phone number was from Burbank, which is, as the professor set out in his affidavit, drug dealers don't want to send their packages right from the neighborhood they live in. The phone number was for what, a landline phone or a cell phone? Cell. You know, all my clerks have cell phones with eastern area codes on them, even though they work in Pasadena. So what's the significance of the fact that somebody sends it from Lakewood, which is a suburb of Los Angeles with an 818 area code on a cell phone that happens to take the area code of where you happen to sign up as your primary home area? And I think that is the danger of taking each of these pieces piecemeal. Well, I know, but the government's talking about a profile. So if you use a cell phone any time that you mail something from outside your local area code, of which there are about five or six in Los Angeles now, you are tagging yourself if you're sending something to Anchorage from Los Angeles as a potential drug dealer. So if I'm sending something of value up here that I need to have up here overnight and I'm willing to pay the price and I seal it so I follow FedEx regulations, I fit the profile of a drug dealer and, therefore, that can be opened on probable cause by the agents up here. If also that the phone number that you're sending to and have listed is one that has been listed in an ongoing drug investigation. Is that part of the profile or that's an additional factor? That's an additional factor. The profile provides an extra level of confidence in the officer's training and experience. You're not only just relying on that officer's training and experience, you're relying on information that's been gathered nationwide that says that these factors in combination make a fair probability that there are going to be drugs in this package. You take the drug package profile in addition to the other items  What about spending a few seconds on the good faith exception? Yes, Your Honor. I think the court can reach the good faith exception first in this case as it's set out in Cruz. And that standard would be that the affidavit was so lacking in an issue of probable cause that the officer should have known not to rely on that affidavit. This would be hard in this case where three judges have found that there was probable cause. How is someone who's not legally trained supposed to know better than three judges, including the chief judge of this district, when they found probable cause? How is an officer not versed in the law supposed to know better than to rely on that warrant? What is our standard of review here? Your opponent seems to say the standard of review is de novo. Is it de novo or is it for clear error? Well, if you use good faith, then the standard wasn't applied because the district court didn't reach good faith because it wasn't objected to. But it is de novo, but that de novo review is of substantial deference to the magistrate, the initial magistrate judge who reviewed the affidavit. Doesn't the Meek case establish that we review for clear error of finding a probable cause? I believe the Cruz case sets out that it is with substantial deference to the issuing magistrate judge that you reviewed the probable cause of that affidavit. All right. Thank you, counsel. A few quick points. First, I'd like to remind the court of the facts of Leon. Leon was the case that set out the good faith exception. What happened in Leon? What kind of evidence was involved in that affidavit? There was a confidential informant of an unknown reliability who gave detailed information about patterns of behavior on the part of the suspects, had seen the suspects over a period of five months, had knowledge about boxes of money and selling of drugs. What did the police do then? They conducted what was described as an extensive investigation involving surveillance of the residents, surveillance of the persons going in and out, checking the records, etc., etc., etc. That was the kind of affidavit that Leon was dealing with, not when you compare the affidavit in this case that there is no relationship whatsoever. I would submit that if there had been even one factor, one factor, that would make a proven person think that there might well be drugs in that box, this affidavit might well have passed both the probable cause test and particularly the good faith test. But in a case where you have no factor, it creates a substantial basis for a person to think there might well be drugs in that box. What kind of factors would work? What kind of factors do you usually see in a case like this? If they had even called the guy who had the post office box and said, Sir, have you ever heard of David Hill? Would he say as it happened in two other cases, Oh, he's my roommate or he's a family member, or would he say, I have never heard of David Hill and I don't know why he's using my post office box? That one factor might have been enough. If there had been a positive dog alert, a tip from someone, if there had been a history of strange mailings between these people or even by one of them, if either one of these people was known to have a drug-related history, these are the things that you usually see in a case like this that take those elusive factors, the kinds of factors that were described in Reed as ones that would subject a large number of innocent persons to virtually random seizures. One factor that a prudent person could rely on could have saved us from the application of the good faith test. There wasn't one in this case, and that's the unusual factor here. Okay, you've used your time. Thank you very much, counsel. We appreciate the argument. Case is submitted. We'll call the next case on calendar, which is Hunter v. Philip Morris. Just for planning purposes, we will probably take a break after the Munn case before we get to the Weyroach and Fairbanks cases.
judges: Nelson, Tashima, Fisher